Earle, J.
The Chancellor refused to allow the defendant the benefit of $2,891, which he claimed to have deducted from the plaintiff’s demand, as so much received by *Melisse Sompeyrac, the agent and attorney of Desire Sompeyrac, for whose benefit the suit is brought. It is alleged that the Chancellor is mistaken, in saying that the “ demands are entirely in distinct rights, and cannot be set off as claimed for the defence is not set up by way of discount, but of actual payment; and that this defence is supported by the evidence. Passing by any objection which might be raised to the Validity of the power itself, as having been executed by a married woman, at a time when she had no subsisting interest ; or admitting that there may be evidence of a subsequent confirmation, it is not very clear that the Chancellor is mistaken in supposing this to be a naked offer to set up against the demand of the plaintiff, a debt due to the defendant’s intestate, from the plaintiff’s agent. Melisse Sompeyrac, the agent and attorney of Desire Sompeyrac, at the utmost, only acknowledges himself to be indebted to DeYillers in the sum of $2,891, which he is answerable for, as a balance; and after referring to *153 the assets of his brother, in the hands of DeYillers, and to his power of attorney, professes to be accountable to Desire Sompeyrac, his mother, for that sum. This would be giving his letter a most liberal construction for the defendant. There is no evidence that DeYillers ever assented to this proposition — he did not discharge Melisse Sompeyrac, nor receive from him any acquittance, from the demand of the plaintiff. So far as there is evidence, it is the reverse; from the letter of Desire Sompeyrac, three years after the date of that of Melisse Sompeyrac to himself, he seems to have stated to her, (and the evidence comes from himself,) that her son ought to account for the sum of $2,891. There is not even an Agreement, between the attorney and DeYillers, to regard the balance dme the latter from the former, as a payment of so much of the legacy.
If it were otherwise, and admitting, for the sake of argument, that there was an agreement to that effect, and mutual acquittances, yet it would not be a compliance with the power, and therefore void. The terms of the power are certainly as various, and the authority given is as comprehensive, as can well be imagined. Yet, in giving it its true ^interpretation, and in deciding upon the conformity of his act, under it, we must have regard to the object originally had in view, and the means contemplated through the agency of the attorney. The power is dated 12th February, 1823, very soon after the death of Theodore Sompeyrac, their son, and the primary object was .to recover for them, and in their behalf, his estate; and the general authority, first given, is to seek for and recover all property, real and personal, which may belong to the estate of the said Theodore Sompeyrac. The subsequent specification of powers, as minute as it is possible, seems to contemplate that the attorney is to take upon him the actual administration of the estate, perhaps without knowledge of the will; for many things he was appointed to do, could only be done, without doubt, by an executor or administrator — when, therefore, power is given to renounce claim to the debts and credits of the estate, and “in all cases where it maybe necessary, to compound, compromise, covenant, and appoint arbitrators,” these taken in connection with other powers, as to “ sue for all sums of money, pay all that may be due,” evidently have reference to a general course of administration, for the purpose of realizing the assets, and certainly do not contemplate the intervention of an executor or administrator, from whom alone the attorney could receive the fund, and whom alone it would be necessary to sue. The power to renounce, to compound, to compromise, had relation only to debts and claims, existing for and against the estate. It is true, the power must be regarded as both general and special; and after the estate had been fully administered by the executors, who alone had control over it, Melisse Sompeyrac, as attorney under the power, had unquestionable authority to receive the legacy from them. But in that state of things, with full knowledge that the whole estate was actually in the hands of the executor, as he admits, upon the most liberal construction of the power he had authority only to demand and receive payment, and, as a consequence, on nonpayment, to institute proceedings. If the power were to receive payment only, it is clear that nothing but an actual* receipt of the money would suffice. The attorney, under such a power, could not accept a note of another, *154 in discharge. Such an acceptance would not bind the principal; and if the principal would not be bound in that case, certainly he would not be bound where the attorney agrees to accept, in discharge, an unliquidated claim or demand upon another, an insolvent person. 11 Mod. 71, 87; 2 Ld. Ray. 928. Here the case is still stronger against the defendant and attorney, for the claim and demand alleged to be accepted, in discharge, was one upon the attorney himself, which the former had no other means of securing, and the latter no other means of paying. This can never be allowed — and if we construe the words, “compound and compromise” in their most enlarged sense, and as applying as well to the claim upon the executors as to claims previous to administration, it would be equally a violation of law, and a fraud upon the principal, to permit the attorney to compound or compromise the right of the principal, by accepting in discharge of a claim which he knew to be perfectly good, a debt upon himself, an insolvent person according to his own acknowledgment.
The decree of the Chancellor is affirmed.
Johnson and O’Neall, Js., concurred.